UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

       Plaintiff,

  v.

APPROXIMATELY $133,803.53 IN
U.S. CURRENCY SEIZED FROM
WASHINGTON MUTUAL BANK, N.A.,
ACCOUNT #4420842802, HELD IN THE
NAME OF ADVANTAGE FINANCIAL
GROUP HOLDINGS MANAGEMENT LLC,
and

APPROXIMATELY $328,495.75 IN
U.S. CURRENCY SEIZED FROM
WASHINGTON MUTUAL BANK, N.A.,
ACCOUNT #4412174338, HELD IN THE
NAME OF LOOMIS WEALTH SOLUTIONS
LLC,

       Defendants.
_____/

2:09-cv-0461 FCD KJM

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on claimant Flagstar Bank's ("claimant" or "Flagstar") motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) as to

$320,697.50 of defendant $328,495.75 in U.S. Currency.[1] Plaintiff United States of America ("plaintiff" or the "government") opposes the motion and filed a motion to strike the claim and answer of claimant pursuant to Supplemental Rule G(8) of the Supplemental Rules fo Admiralty, Maritime Claims, and Asset Forfeiture Actions ("Supplemental Rules").  For the reasons set forth below,[2] claimant's motion for judgment on the pleadings is DENIED, and plaintiff's motion to strike Flagstar's Claim and Answer is GRANTED.

**BACKGROUND**

The government filed this action for forfeiture *in rem* on February 17, 2009.  (Verified Compl. ("Compl.", filed Feb. 17, 2009.)  The funds at issue were seized on or about August 27, 2008, pursuant to valid search warrants.  (Decl. of Kathleen Nicolls in Supp. of Compl ("Nicolls Decl."), Ex. A to Compl., filed Feb. 17, 2009, ¶ 4.)  The government believes that they are traceable to violations of federal law arising out of loan and credit fraud, identification documents fraud, wire fraud, bank fraud, money laundering, and illegal monetary transactions.  (Id. ¶¶ 6-7.)  Specifically, the funds are described as:

(1) approximately $133,803.53 in U.S. Currency seized from Washington Mutual Bank, N.A., Account #4420842802, held

---

[1] Claimant clarified in its reply that it seeks only to recover this amount, which reflects the money traceable from Flagstar to the Loomis Wealth Solutions LLC account. (Claimant's Reply, filed Feb. 5, 2010, at 1.)

[2] Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. L. R. 230(g).

in the name of Advantage Financial Group Holdings
Management LLC, and

(2) approximately $328,495.75 in U.S. Currency seized from Washington Mutual Bank, N.A., Account #4412174338, held in the name of Loomis Wealth Solutions LLC (the "LWS Account").

The government alleges that since at least 2006, directors of Loomis Wealth Solutions ("LWS"), Nationwide Lending Group, the NARAS Secured Fund #2 LLC, and/or related entities, ran a large, multi-tiered Ponzi investment scheme, involving securities fraud and real estate mortgage fraud. (Id. ¶ 13.) Straw buyers, also known as nominee-investors, were used to purchase the properties. (Id. ¶ 14.) They were told that the purchases were investments on which they would receive a handsome return while LWS made the mortgage, tax and insurance payments. However, LWS stopped making payments by spring of 2008. By August 2008, LWS informed investors that they would have to pay their own life insurance payments and cover all the mortgage, tax, and insurance payments coming due on their respective properties, or that their loans would go into default. Ultimately, many loans went into default. (Id.) The alleged fraudulent activities span six states and involve approximately 500 properties; losses are estimated at approximately $100 million. (Id. ¶ 13.)

In or around August 2008, Excel Funding ("Excel"), an independent mortgage company, authorized the funding of certain loans and released those loan funds for real property purchase transactions. (Id. ¶¶ 52-54.) The loan funds were obtained by Excel through a line of credit with Flagstar. (Id.) The funds

3

were wired from Flagstar to Contemporary Solutions-USA, Inc. ("Contemporary"), an entity used as a title company. (Id. ¶¶ 53-54.) Contemporary, in turn, wired the funds it received to Lender Services Direct ("LSD"). Subsequently, LSD wired the funds it received from Contemporary into the LWS Account in the total amount of $320,697.50. (Id. ¶¶ 52-54, 65-66.) Loomis and others falsified documents and committed other breaches in order to create the appearance that the real estate transactions had properly closed escrow. (Id. ¶ 54.) Because the documents appeared to reflect a proper closing, Excel authorized and released loan funds for the real property transactions. (Id.)

Flagstar claims that is the beneficiary of a constructive trust in the defendant currency as a victim of the alleged fraud. (Verified Claim ("Claim"), filed Apr. 22, 2009, at 2.) Specifically, Flagstar contends that it maintains an ownership interest in the currency "which the perpetrator of the fraud wrongfully obtained and the United States Government acquired." (Id.)

**STANDARD**

**A. Supplemental Rule G**

Supplemental Rule G provides that "[a]t any time before trial, the government may move to strike a claim or answer . . . because the claimant lacks standing." Supplemental Rule G(c)(i)(B). A claimant in a forfeiture proceeding bears the burden of showing, as a threshold matter, that he owns or has an interest in the property sought to be forfeited. United States v. $20,193.39 in U.S. Currency, 16 F.3d 344, 346 (9th Cir. 1994). While state law determines whether a claimant has a property

4

interest, federal law determines whether or not that interest can be forfeited. Hooper, 229 F.3d at 820. See United States v. Hooper, 229 F.3d 818, 820 (9th Cir. 2000) (citing United States v. Lester, 85 F.3d 1409, 1412 (9th Cir. 1996)); see also United States v. Alcaraz-Garcia, 79 F.3d 769, 774 (9th Cir. 1996).

**B.   Rule 12(c)**

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings after the pleadings are closed. The standard governing a Rule 12(c) motion for judgment on the pleadings is basically the same as that which governs Rule 12(b) motions. See Hal Roach Studios v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).

Under Federal Rule of Civil Procedure 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). On a motion to dismiss, the factual allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

5

Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555; Iqbal, 129 S. Ct. at 1950 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

In ruling upon a 12(c) motion, the court may consider only the pleadings, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. See Hal Roach Studios, Inc., 896 F.2d at 1550; Mir v. Little Co. Of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

**ANALYSIS**

Through its motion, claimant Flagstar seeks an order granting Flagstar's claim to approximately $328,495.75 and dismissing the forfeiture against this defendant. The government

asserts that Flagstar lacks standing, and as such, claimant's motion should be denied and its claim and answer stricken.[3]

"In every federal case, the party bringing the suit must establish standing to prosecute the action." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004). The standing doctrine establishes "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." United States v. Lazarenko, 476 F.3d 642, 649 (9th Cir. 2007) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). Standing jurisprudence is comprised of two strands: "Article III standing, which enforces the Constitution's case-or-controversy requirement; and prudential standing, which embodies judicially self-imposed limits on the exercise of jurisdiction." Newdow, 542 U.S. at 11 (internal quotations and citations omitted).

Prudential standing encompasses, *inter alia*, "the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." Lazarenko, 476 F.3d at 650. "[T]he breadth of the zone of interests varies according to the provisions of law at issue." Bennett v. Spear, 520 U.S. 154, 163 (1997). "Congress legislates against the background of [the] prudential standing doctrine, which applies unless it is expressly negated." Id.

---

[3] Because the court concludes that the issue of prudential standing is dispositive, it does not reach the merits of the parties' arguments relating to Article III or statutory standing. Tenet v. Doe, 544 U.S. 1, 6 n.4 (noting that prudential standing represents the sort of "threshold question" that may be resolved before addressing jurisdiction); see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 100 n.3 (1998).

18 U.S.C. § 981(a) provides that any property, real or personal, involved in money laundering or derived from loan, document, mail, wire, or bank fraud is subject to civil forfeiture to the United States. In April 2000, Congress amended 18 U.S.C. § 981 to provide that forfeited assets could be restored to crime victims of the offense giving rise to forfeiture. See 18 U.S.C. § 981(e)(6) ("[T]he Attorney General . . . is authorized to retain property forfeited pursuant to this section, or to transfer such property on such terms and conditions as he may determine as restoration to any victim of the offense giving rise to forfeiture."). In adopting this forfeiture/victim remission model, Congress granted the Attorney General sole discretion to address claims by victims through a remissions process that occurs after the successful prosecution of the forfeiture case. See 18 U.S.C. § 981(d) ("The Attorney General shall have sole responsibility for disposing of petitions for remissions or mitigation with respect to property involved in a judicial forfeiture proceeding."). Federal regulations provide guidance on who may file a petition with the Attorney General and the procedure for filing. 28 C.F.R. 9.4. These regulations also set forth the criteria considered in the exercise of the Attorney General's discretion, 28 C.F.R. § 9.5, and specific rules for a variety of specific petitioners, including crime victims "who do not have a present ownership interest in the forfeited property." 28 C.F.R. §§ 9.6-9.8.

Congress's creation of a remission process for crime victims and explicit delegation of responsibility to the Attorney General over petitions filed pursuant to that process, combined with the

absence of statutory language negating the application of the prudential standing doctrine to potential claims of victims, compels the conclusion that the claimant in this case lacks prudential standing. United States v. Real Property Located at 730 Glen-Mady Way ("Glen-Mady"), 590 F. Supp. 2d 1295, 1303 (E.D. Cal. 2008) (holding that victims/investors in a fraudulent scheme lacked prudential standing to file a claim in a civil forfeiture action under § 981); see United States v. Wilson, 640 F. Supp. 2d 1257, 1262 (E.D. Cal. 2009) (holding that victims/investors in a fraudulent scheme lacked prudential standing to file a claim in criminal forfeiture action). Claimant Flagstar's interest is not within the zone of interest Congress intended to protect within this civil forfeiture proceeding. To decide otherwise would convert this forfeiture case into a trust administration proceeding and "shun the procedures Congress deliberately enacted to vindicate third-party claims." Lazarenko, 476 F.3d at 652; Glen-Mady, 590 F. Supp. 2d at 1303; Wilson, 640 F. Supp. 2d at 1262; see United States v. Bright, 353 F.3d 1114, 1124 (9th Cir. 2004) (holding that requiring district courts to attempt to apply forfeited funds would conflict with the grant of discretion § 981(e) expressly and specifically gives to executive actors); United States v. Schwimmer, 968 F.2d 1570, 1584 (2d Cir. 1992) (referring to similar RICO criminal forfeiture provisions as "a statute that states that the Attorney General, and not the judiciary, shall make decisions about how to divide up the funds in order to compensate victims. . . . Because Congress has chosen to allocate to the Attorney General the power to remit funds for victim compensation, it is inappropriate in the context of this

case to relax conceptions of property rights in order to permit courts to compensate victims"); United States v. BCCI Holdings, 46 F.3d 1185, 1191-92 (D.C. Cir. 1995) (declining to recognize claim of general creditor, because "[w]ere it otherwise, the court litigating the forfeiture issue would be converted into a bankruptcy court," which "appears patently at odds with the statutory scheme, which directs parties without an interest in specific property to seek relief from the Attorney General, not the court adjudging the forfeiture").

Further, the conversion of this action into trust administration proceeding is neither necessary to protect the individual rights of victim/investors nor judicially efficient. Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1046 (9th Cir. 2008) (recognizing that concerns of judicial economy properly affect the resolution of prudential standing issues); Glen-Mady, 590 F. Supp. 2d at 1304. The individual rights of victims to restitution already are protected through the remission process set forth by Congress in the civil forfeiture statute. See 18 U.S.C. § 981(e); 28 C.F.R. § 9.8. A trust administration proceeding would effectively duplicate this process. See 28 C.F.R. § 9; Glen-Mady, 590 F. Supp. 2d at 1304.[4]

Claimant disagrees, arguing that the Ninth Circuit's decision in United States v. $4,224,958.57 ("Boylan"), 392 F.3d 1002, 1004 (9th Cir. 2004), provides that the court, not the

---

[4] Moreover, if the defendant is convicted of an offense giving rise to restitution in the parallel criminal case, such a trust administration proceeding would overlap with the court's determinations under the Mandatory Victim Restitution Act. See 18 U.S.C. §§ 3663A, 3664.

executive, should adjudicate the claims of fraud victims. Claimant interprets the holding in <u>Boylan</u> too broadly. In <u>Boylan</u>, an individual named Sexton persuaded seventy-eight individuals to send him money to invest, which he subsequently used in his wire fraud and money laundering schemes that resulted in various bank accounts in Liechenstein. <u>Id.</u> at 1003. After the government of Liechtenstein repatriated approximately $4.25 million of these funds to the United States, the government filed a civil forfeiture action against these funds and obtained a default judgment without noticing the victims of Sexton's scheme. <u>Id.</u> Subsequently, twenty-five of the seventy-eight victims came forward and filed claims. <u>Id.</u> at 1004. The district court rejected the claims, holding that the victims were unsecured creditors and therefore lacked Article III standing to contest the civil forfeiture. <u>Id.</u> The Ninth Circuit reversed, holding that if victims can prove they were defrauded, they are the beneficiaries of a constructive trust under California law and have Article III standing to enter the forfeiture case itself. <u>Id.</u> at 1005. On remand the court of appeals instructed the district court to convert the forfeiture action into something akin to a bankruptcy proceeding, "giving notice to all potential claimants and taking steps to assure that no claimant obtains more than his or her fair share." <u>Id.</u>

However, contrary to defendant's assertion,[5] the Boylan court neither acknowledged nor addressed the prudential strand of the standing doctrine.[6] Thus, even if the Boylan decision establishes that claimant Flagstar has Article III standing, it does not preclude this court from reaching a different conclusion under the doctrine of prudential standing. Glen-Mady, 590 F. Supp. 2d at 1302; see Gonzales v. Department of Homeland Security, 508 F.3d 1227, 1235 (9th Cir. 2007) ("issues that are not raised or discussed are unstated assumptions on non-litigated issues [and] are not precedential holdings binding further decisions"); see also Fulfillment Serv. Inc. v. United Parcel Serv., 528 F.3d 614 (9th Cir. 2008) (prudential standing addresses concerns apart from Article III standing).

Alternatively, claimant asserts that because it is the beneficiary of a constructive trust, it is an innocent owner, which Congress expressly excluded from the remissions process under 18 U.S.C. § 983(d). Section 983(d) provides that "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture status." 18 U.S.C. § 983(d)(1). "[T]he term owner means a person with an ownership interest in

---

[5] Claimant erroneously asserts that arguments relating to the overlap between the court's administration of the constructive trust and the Attorney General's remission process "had been raised and **rejected** in Boylan." (Claimant's Mot., filed Nov. 23, 2009, at 9) (emphasis in original). There is no mention of the Attorney General's remission process or 18 U.S.C. § 981(d)-(e) in Boylan.

[6] The court also notes that the Boylan court failed to discuss whether the petitioners' interests were entitled to preference over the government under 21 U.S.C. § 853(n). The court need not resolve this issue in light of its conclusion regarding prudential standing.

the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest." 18 U.S.C. § 983(d)(6)(A). However, the statute expressly excludes "a person with only a general unsecured interest in, or claim against, the property or estate of another" and "a nominee who exercises no dominion or control over the property." 18 U.S.C. § 983(d)(6)(A).

However, crime victims are notably not referenced in the definition of an innocent owner. Similarly, the term "owner" does not include reference to beneficiaries of a constructive trust. See BCCI Holdings, 46 F.3d at 1190-91 (holding that the owners of a constructive trust did not have a right superior to the government's RICO forfeiture claim because consideration of a constructive trust would be inconsistent with the statutory remedial scheme); U.S. v. BCCI Holdings (Luxembourg), S.A., 69 F. Supp. 2d 36, 58-59 (D.D.C. 1999) (holding that under relevant state law, one who voluntarily transfers property is no longer the owner, and the ability to trace it to transferee's assets is irrelevant); see also Hooper, 229 F.3d at 821 (holding that the owner of a community property interest did not have a right superior to the government's criminal forfeiture claim because a finding of superiority would be inconsistent with the statutory remedial scheme even though such interpretation "leads inevitably to the conclusion that [the section] is likely never to apply to proceeds of the crime"). As such, under the allegations set forth by the parties in this case, § 983(d) does not expressly preclude application of the prudential standing doctrine because claimant is the beneficiary of a constructive trust.

13

Accordingly, the court concludes that claimant Flagstar fails to satisfy the prudential components of standing.

**CONCLUSION**

Therefore, for the foregoing reasons, claimant's motion for judgment on the pleadings is DENIED, and plaintiff's motion to strike claimant's claim and answer is GRANTED.

IT IS SO ORDERED.

DATED: February 9, 2010

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE